UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN VOAGE,<br><br>         Plaintiff,<br><br> vs.<br><br>DR. SHPANER; and DR. MASSOUD SOUMEKH,<br><br>         Defendants. | Case No.: 3:21-cv-00420-WQH-BLM<br><br>**ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FRCP 12(b)(6)**<br><br>**[ECF Nos. 10, 11]** |

Hayes, Judge:

  Plaintiff Kevin Voage, a state inmate currently housed at the California Health Care Facility located in Stockton, California, is proceeding in this civil rights action pursuant to 42 U.S.C. § 1983. (ECF No. 1). On August 11, 2021, Plaintiff filed his Complaint alleging Defendants Dr. Massoud Soumekh and Dr. Alexander Shpaner violated his Eighth Amendment rights when they were deliberately indifferent to his serious medical needs.

  Currently before the Court are Defendants Soumekh and Shpaner's Motions to Dismiss Plaintiff's Complaint. (ECF Nos. 10, 11). Both Defendants contend that the Complaint fails to state an Eighth Amendment claim upon which relief may be granted against them. In addition, Soumekh contends that Plaintiff's entire Complaint should be dismissed as untimely under the "applicable statute of limitations." (ECF No. 10-1 at 7).

Plaintiff has filed an Opposition and both Defendants have filed Replies. (ECF Nos. 20, 23-24).

## I.     ALLEGATIONS IN THE COMPLAINT

On July 1, 2016, Plaintiff was incarcerated at R.J. Donovan State Prison ("RJD") and underwent cervical spinal fusion surgery. (ECF No. 1 at 6). The surgery was performed by Defendant Soumekh. (*Id.*). Soumekh "failed to check to make sure [that the] device used to fuse Plaintiff's cervical spine was properly attached before closing the surgery site." (*Id.* at 3). Plaintiff suffered from respiratory complications from the surgery and was hospitalized in the intensive care unit ("ICU") for about a month, then discharged for physical therapy. (*Id.* at 6). Plaintiff was transferred back to RJD in late August of 2016. (*Id.*).

Following his transfer back to prison, Plaintiff began to have difficulty swallowing and breathing, was coughing up blood, and was feeling burning pain. (*Id.*). In September of 2016, Plaintiff underwent "an upper GI,"[1] which was performed by Dr. Ananthoran Reddy at Alvarado Hospital. (*Id.*). Reddy diagnosed Plaintiff with a polyp and performed a biopsy on the tissue which came back negative for cancer and positive for stomach acid. (*Id.*). Plaintiff underwent a second upper GI in December of 2016 at which time Reddy found the polyp to have grown significantly. (*Id.*). A second biopsy again found the tissue tested negative for cancer and positive for stomach acid. (*Id.* at 6-7).

In January of 2017, Plaintiff underwent a laryngoscopy and was referred for a third upper GI. (*Id.* at 7). Reddy was unavailable and so Defendant Shpaner performed the

---

[1]  *See* Upper GI series, Merriam-Webster.com Medical Dictionary, Merriam-Webster, https://www.merriam-webster.com/medical/upper%20GI%20series (last visited April 22, 2021) (defining "Upper GI" as a "fluoroscopic and radiographic examination (as for the detection of gastroesophageal reflux, hiatal hernia, or ulcers) of the esophagus, stomach, and duodenum during and following oral ingestion of a solution of barium sulfate."); *see also Cox v. Allin Corp. Plan*, 70 F. Supp. 3d 1040, 1044 n.2 (N.D. Cal. 2014) (noting that a court may take judicial notice of "medical dictionary definitions" (citation omitted)).

procedure. (*Id.*). Shpaner discovered that the "polyp" was actually a hole in Plaintiff's esophagus and identified what he termed a "foreign body" in the esophagus. (*Id.*). Shpaner "used forceps for three failed attempts to remove the metallic object by yanking hard enough to lift [Plaintiff's] entire upper body off of the gurney" despite Plaintiff's "pleas of pain" and Plaintiff's assertion that the "foreign body" was most likely the metal device used to fuse his cervical spine. (*Id.*). Plaintiff asked Shpaner to "refer [him] to emergency surgery to repair damage, but Dr. Shpaner ignored [his] pain." (*Id.*) Plaintiff was instead referred to Dr. Brian Weeks for removal of what doctors believed was a razor blade. (*Id.*).

In July or August of 2017, Weeks performed a CT scan on Plaintiff and discovered that the "foreign body" was part of the device Defendant Soumekh had implanted during the spinal fusion surgery. (*Id.* at 8). Weeks did not treat Plaintiff, but instead referred him for a fourth upper GI, which was performed by Reddy on October 25, 2017. (*Id.*). The test "revealed the hole in [Plaintiff's] esophagus was infected; the metal object was the head of a bolt, a screw and other hardware; and the bone was exposed and infected." (*Id.*). On October 30, 2017, at the request of Defendant Soumekh, Plaintiff was transported to Alvarado Hospital for "emergency surgery" to repair the damage the failed spinal fusion device had caused. (*Id.*). After consulting with Reddy, Soumekh decided not to perform the surgery because "this could become a very difficult problem," and "removing the anterior plate system most likely caused perforation of the esophagus for [Plaintiff] and treating that complication is very difficult." (*Id.* at 8-9). Plaintiff was discharged without receiving the "emergency surgery" for which he had been admitted, returned to prison, and was scheduled for surgery by neurosurgeon Dr. Onaitis on February 20, 2018. (*Id.* at 9).

Before he could undergo the surgery, Plaintiff "collapsed and lost all function or ability to move [his] arms, legs, body and could not talk or communicate." (*Id.*). Plaintiff was transported to U.C. San Diego Hospital in "full cardiac arrest . . . requiring resuscitation." (*Id.*). When Plaintiff regained consciousness, he found himself in the ICU and was completely paralyzed, including his arms, legs, and vocal cords. (*Id.*). Plaintiff also had a feeding tube and a breathing tube inserted. (*Id.*). Six weeks later, in March

2018, Plaintiff was discharged to Vibra Hospital, where he was told a "faulty device improperly installed" is what caused his problems. (*Id.* at 9-10). "Upon the knowledge of the extent of damage to [Plaintiff's] body, [Plaintiff] immediately made every effort to file complaints, but officers interfered, until now." (*Id.* at 10). Defendants' acts "caused [Plaintiff] to become a quadriplegic." (*Id.*). "Part of [Plaintiff's] cervical spine was removed and replaced by a two in titanium cage due to severe bone infection," which requires Plaintiff to take antibiotics for the rest of his life. (*Id.*). In addition, staples were placed in Plaintiff's esophagus to repair the hole made by the faulty device, which make eating "very painful." (*Id.*).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility requires pleading facts, as opposed to conclusory allegations or the "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, which rise above the mere conceivability or possibility of unlawful conduct, *Iqbal*, 556 U.S. at 678-79. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While a pleading "does not require 'detailed factual allegations,'" Rule 8 nevertheless "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Therefore, "[f]actual allegations must be enough to raise a right to relief above the

speculative level." *Twombly*, 550 U.S. at 555. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *id.* at 557). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences [drawn] from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. United States Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *id.* at 678).

## III. DISCUSSION[2]

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

"[D]eliberate indifference to serious medical needs of prisoners constitutes 'the unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 103, 104 (1976) (citation omitted). "A determination of 'deliberate indifference' involves an examination of two elements: (1) the seriousness of the prisoner's medical need and (2) the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991) (en banc) (quoting *Estelle*, 429 U.S. at 104), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997); *see also Wilhelm v. Rotman*, 680 F.3d 1113 (9th Cir. 2012); *Jett v. Penner*,

---

[2] Defendant Soumekh has filed a request for judicial notice. (ECF No. 10-2). Soumekh seeks judicial notice of a previous action filed in this Court and an action filed in San Diego Superior Court by Plaintiff. A court may take judicial notice of its own records. *See Molus v. Swan*, No. 3:05-cv-00452-MMA-WMc, 2009 WL 160937, at *2 (S.D. Cal. Jan. 22, 2009) (citing *United States v. Author Servs.*, 804 F.2d 1520, 1523 (9th Cir. 1986)); *Gerritsen v. Warner Bros. Entm't Inc.*, 112 F. Supp. 3d 1011, 1034 (C.D. Cal. 2015). A court "'may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.'" *Bias v. Moynihan*, 508 F.3d 1212, 1225 (9th Cir. 2007) (quoting *Bennett v. Medtronic, Inc.,* 285 F.3d 801, 803 n.2 (9th Cir. 2002)). Soumekh's request for judicial notice is granted.

439 F.3d 1091, 1096 (9th Cir. 2006).

A. <u>Statute of Limitations</u>

Defendant Soumekh contends that Plaintiff's filing of his Complaint on March 9, 2021, is "well-beyond the expiration of the statute of limitations and is therefore untimely," as he should have filed this action no later than March of 2020. (ECF No. 10-1 at 10-11). Soumekh contends that based on the factual allegations in the Complaint, Plaintiff "certainly had reason to believe that the surgical hardware that was implanted by Dr. Soumekh was causing him injury and was the result of Dr. Soumekh's wrongdoing" in March 2018. (*Id.* at 11).

"A claim may be dismissed [for failing to state a claim] on the ground that it is barred by the applicable statute of limitations only when 'the running of the statute is apparent on the face of the complaint.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quoting *Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 997 (9th Cir. 2006)). "'A complaint cannot be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim.'" *Id.* (quoting *Supermail Cargo, Inc. v. U.S.,* 68 F.3d 1204, 1206 (9th Cir. 1995)); *see also Cervantes v. City of San Diego*, 5 F.3d 1273, 1276-77 (9th Cir. 1993) (where the running of the statute of limitations is apparent on the face of a complaint, dismissal for failure to state a claim is proper, so long as Plaintiff is provided an opportunity to amend in order to allege facts which, if proved, might support tolling).

§ 1983 contains no specific statute of limitation; therefore, federal courts apply the forum state's statute of limitations for personal injury actions. *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004); *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). Before 2003, California's statute of limitations was one year. *Jones*, 393 F.3d at 927. Effective January 1, 2003, the limitations period was extended to two. *Id.* (citing CAL. CIV. PROC. CODE § 335.1).

The law of the forum state also governs tolling. *Wallace v. Kato*, 549 U.S. 384, 394 (2007); *Jones*, 393 F.3d at 927 (where the federal court borrows the state statute of

limitation, the federal court also borrows all applicable provisions for tolling the limitations period found in state law). Under California law, the statute of limitations for prisoners serving less than a life sentence is tolled for an additional two years. CAL. CIV. PROC. CODE § 352.1(a). Accordingly, the effective statute of limitations for *most* California prisoners is four years for claims accruing after January 1, 2003 (two-year limitations period plus two-years statutory tolling). Assuming Plaintiff had reason to know of his alleged injury in March 2018, Plaintiff had until March of 2022 to file this action. Defendant Soumekh's Motion to Dismiss the Complaint on the statute of limitations ground is denied.

B.     Under Color of State Law

Defendant Shpaner contends that Plaintiff has failed to allege that Shpaner was a "person acting under color of state law," a necessary element of an action brought pursuant to § 1983. (ECF No. 11-1 at 10). Shpaner contends that while "some physicians who contract to provide services to a prison may be considered state actors, Dr. Shpaner is not alleged to have worked at the prison." (ECF No. 11-1 at 10).

The Supreme Court's decision in *West v. Atkins*, 487 U.S. 42 (1988) unanimously held that a doctor hired to provide medical care to state prisoners was a state actor for purposes of § 1983. *Id.* at 54. The Court held that each state must provide medical care to prisoners and that when a state contracts with a private doctor to provide that care, as the State of California did in this matter, the doctor becomes a state actor, "clothed with the authority of state law." *Id.* at 55. If a doctor hired by the CDCR "misused his power by demonstrating deliberate indifference" to an inmate's serious medical needs, the constitutional deprivation is "caused, in the sense relevant for state-action inquiry," by the State's having incarcerated the prisoner and putting his medical care under the control of that doctor. *Id.* It is "the physician's function within the state system," not his private-contractor status, that determined whether his conduct could "fairly be attributed to the State." *Id.* at 55-56. "Contracting out prison medical care does not relieve the State of its constitutional duty to provide adequate medical treatment to those in its custody, and it

does not deprive the State's prisoners of the means to vindicate their Eighth Amendment rights." *Id.* at 56.

Plaintiff was sent to an outside hospital to be provided medical care by the CDCR and Defendant Shpaner is alleged to be the doctor that provided the care. The Court finds that Defendant Shpaner is a state actor for purposes of 42 U.S.C. § 1983 liability. Defendant Shpaner's Motion to Dismiss the Complaint on the grounds that Shpaner is not alleged to be a state actor is denied.

        C.      Serious Medical Need

Defendant Shpaner seeks dismissal of the Complaint on the ground that Plaintiff has not alleged a "serious medical need for treatment by Dr. Shpaner." (ECF No. 11-1). In order to allege an Eighth Amendment deliberate indifference claim, a plaintiff must first establish a "'serious medical need' by demonstrating that '[the] failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Jett*, 439 F.3d at 1096 (quoting *McGuckin*, 974 F.2d at 1059). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *Id.*

The Complaint alleges that Plaintiff sought treatment from Shpaner after Plaintiff began to have difficulty swallowing and breathing, was coughing up blood and was feeling burning pain. (ECF No. 1 at 6). The Complaint alleges that Shpaner discovered a "hole in [Plaintiff's] esophagus" while performing an "upper g.i." on Plaintiff. (*Id.*). These allegations are sufficient to satisfy the objective component of an Eighth Amendment claim. *See e.g., Peralta v. Dillard,* 744 F.3d 1076, 1086 (9th Cir. 2014) ("We've held that the 'existence of chronic and substantial pain' indicates that a prisoner's medical needs are

serious") (citing *McGuckin*, 974 F.2d at 1060); *see also Lamon v. Austin*, No. 12-cv-00296-AWI-BAM-PC, 2015 WL 5595254, at *4 (E.D. Cal. Sept. 22, 2015) (recognizing "excruciating" esophageal pain as an objectively serious medical need). Defendant Shpaner's Motion to Dismiss the Complaint on the ground that Plaintiff fails to adequately allege serious medical need is denied.

### D. Deliberate Indifference

Defendants Soumekh and Shpaner argue that Plaintiff has failed to allege facts sufficient to show that either Defendant was deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. (ECF No. 10-1 at 12-15; ECF No. 11-1 at 12-16). Defendant Soumekh contends that the only allegations against him are that he was negligent in performing surgery on Plaintiff that included an "implanted device" that failed and that he "ultimately determined not to perform surgery to remove the surgical hardware." (ECF No. 10-1 at 14). Soumekh contends that "neither the negligent performance of a surgical procedure, nor the decision not to re-operate on the patient" amounts to the "level of wrongdoing that is contemplated for a claim of deliberate indifference to Plaintiff's medical needs." (*Id.*). Defendant Shpaner contends that Plaintiff's allegations that he "had a metal object lodged in his esophagus and [Shpaner] performed a procedure in an attempt to remove it" does "not rise to the level of a Constitutional violation." (ECF No. 11-1 at 13). Shpaner contends that "contentions of medical malpractice are insufficient to state a medical indifference claim." (*Id.*).

Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." *Jett*, 439 F.3d at 1096 (citing *McGuckin,* 974 F.2d at 1060). Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper, are all insufficient to constitute an Eighth Amendment violation. *Gamble*, 429 U.S. at 105-07; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985). "Medical malpractice does not become a

constitutional violation merely because the victim is a prisoner." *Gamble*, 429 U.S. at 106; *see, e.g., Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir. 1995); *McGuckin*, 974 F.2d at 1050; *Broughton v. Cutter Lab'ys*, 622 F.2d 458, 460 (9th Cir. 1980). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). Instead, a plaintiff must allege that "the course of treatment the doctors chose was medically unacceptable under the circumstances' and that the defendants 'chose this course in conscious disregard of an excessive risk to [his] health.'" *Hamby v. Hammond*, 821 F.3d 1085, 1092 (9th Cir. 2016) (citations omitted).

In his Complaint, Plaintiff alleges that Defendant Soumekh "failed to check" that the device he implanted during the surgery was "properly attached before closing the surgery." (ECF No. 1 at 3). Plaintiff further alleges that "[a]fter realizing the extent of his failures, Dr. Soumekh noted his desire to distance himself from a very difficult problem" and his "delays allowed damage to escalate." (*Id.*). Plaintiff alleges that Soumekh "callously" declined to perform "emergency surgery" because the surgery was "very difficult." (*Id.* at 8-9). As a result, Plaintiff became a "quadriplegic for the rest of his life." (*Id.* at 4). These "factual matter[s], accepted as true," state an Eighth Amendment claim against Defendant Soumekh that is "plausible on its face." *Iqbal*, 556 U.S. at 678; *see Hunt*, 865 F.2d at 201 ("Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment.").

In his Complaint, Plaintiff alleges that in Defendant Shpaner's attempts to remove what he thought was a foreign body, Shpaner "used forceps for three failed attempts to remove the metallic object by yanking hard enough to lift [Plaintiff's] entire upper body off of the gurney," and "ignored [Plaintiff's] pleas of pain as [Plaintiff] stated that it has to be the device used to fuse [his] cervical spine because his yanking injured [him]." (*Id.*). The Complaint alleges that Plaintiff asked Shpaner to refer him for emergency surgery, but Shpaner "ignored [his] pain." *Id.* These allegations are sufficient to support a plausible claim of deliberate indifference to Plaintiff's serious medical needs by Shpaner. *See Jett*,

439 F.3d at 1096.  Defendants' Motions to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) are denied.

### IV. MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff previously filed a Motion for Appointment of Counsel on September 22, 2021. (ECF No. 18). Magistrate Judge Barbara Major denied Plaintiff's Motion finding that Plaintiff "failed to allege the requisite 'exceptional circumstances,'" required by 28 U.S.C. Section 1915(e)(1) in order for the Court to have the discretion to appoint counsel for Plaintiff. (ECF No. 19 at 3). Specifically, Magistrate Judge Major found that Plaintiff "has drafted and submitted several pleadings without the assistance of counsel" which demonstrated Plaintiff was "able to articulate the claims of his case." (*Id.* at 2). Plaintiff later filed a "Response to Order Denying Motion to Appoint Counsel" in which he stated that he relied on another inmate to draft and submit pleadings on his behalf. (ECF No. 22 at 1). The Court finds that the facts in this case could warrant appointment of counsel.

### V. CONCLUSION

IT IS HEREBY ORDERED that the Defendants Soumekh and Shpaner's Motions to Dismiss Plaintiff's Complaint (ECF Nos. 10, 11) are denied. The Court refers this case to the Court's Pro Bono Panel.

Dated: November 19, 2021

Hon. William Q. Hayes
United States District Court